Lecza v. Healthsource                    CV-95-382-JM  03/27/97

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Adeline Lecza

        v.                              Civil No. 95-382-JM

Healthsource, Inc., and
Healthsource New Hampshire, Inc.


**O R D E R**

        In its current posture, this class action presents questions as to whether defendants Healthsource, Inc., and one of its subsidiaries, Healthsource New Hampshire, Inc., have violated the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq.  In her amended complaint, the putative class representative, plaintiff Adeline Lecza, alleges that defendants have engaged in a pattern and practice of negotiating with health care providers covert discount agreements which benefit themselves but not the participants in and beneficiaries of the health insurance plans defendants administer and/or underwrite.  Plaintiff avers that this pattern and practice constitutes a breach of the express provisions of her self-funded plan -- the Lockheed Medical Benefit Plans for Lockheed Sanders,

Inc. (the Plan)-- and of certain fiduciary duties imposed upon defendants by ERISA.[1]  She sues to recover benefits due and to enforce the terms of the Plan.

Defendants have moved to dismiss on seven separate grounds, including failure to exhaust administrative remedies.  See Drinkwater v. Metropolitan Life Ins. Co., 846 F.2d 821, 825-26 (1st Cir.) (administrative exhaustion required for ERISA claims that are, at bottom, contract-based), cert. denied, 488 U.S. 909 (1988).  Plaintiff concedes that she has not availed herself of the appeals process established by her Plan; she argues, however, that she should be excused from exhaustion on public policy grounds.  She also contends in the alternative that, with respect to her breach of fiduciary claims, the exhaustion requirement should not apply.  After giving the matter careful consideration, the court grants defendants' motion on grounds of non-exhaustion.

I.

Taking plaintiff's allegations and all reasonable inferences that may be drawn from these allegations as true, e.g., The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16

---

[1]Although defendants dispute it, plaintiff alleges that Healthsource New Hampshire is the administrator of the Lockheed Sanders Plan.  Plaintiff further contends that, in all material respects, Healthsource New Hampshire acted under the direction of Healthsource, its parent company.

(1st Cir. 1989), the facts upon which resolution of defendants'
motion depends are as follows.  Plaintiff received health care
services from St. Joseph Hospital in Nashua, New Hampshire, on
September 20-21, 1994.  Plaintiff alleges that, at the time she
received these services, the Plan was obliged to pay 70% of the
"reasonable and customary charges" for the type of services
provided.  Reasonable and customary charges were "[t]he
prevailing charges for the same service or supply being charged
in your geographic area by providers of similar professional
standing as determined by the administrator of the plan."

Healthsource New Hampshire determined that the
reasonable and customary charge for the services plaintiff
received was $2,161.10, and informed plaintiff of this
determination.  It did not, however, issue payment[2] in the amount
of $1,512.77 (70% of $2,161.10), as plaintiff expected under the
terms of her Plan.  Instead, Healthsource New Hampshire, at the
behest of Healthsource, Inc., negotiated a secret agreement[3] with
the hospital under which the total bill would be only $1,728.86.

---

[2]Plaintiff implies that Healthsource New Hampshire, and not
the Plan (or some instrument thereof), held the moneys from which
the Plan's obligations were paid.  Defendants hotly dispute this.

[3]The agreement is alleged to be secret because the
Explanation of Benefits sent to plaintiff misleadingly failed to
make clear that the hospital in fact charged less than its usual
and customary rate.

Healthsource New Hampshire then failed to pass along to plaintiff a pro rata (or any other) share of the $432.24 saved; rather, it directed plaintiff to pay a full 30% of the full reasonable and customary charge ($648.33) and itself paid only the remaining $1,080.53, which is a mere 50% of the reasonable and customary charge for plaintiff's treatment. Plaintiff contends that deceptive episodes of this precise nature have occurred so often and have affected so many people that class-based relief against defendants is warranted.

Plaintiff's Plan sets forth a procedure by which participants and beneficiaries can challenge denials of benefit claims.[4] It provides:

> If you submit a claim for benefits and it is denied, in whole or in part, you may submit a written request to Healthsource New Hampshire, Inc. Claims Review Committee for Sanders, requesting a review. The Healthsource Committee will review your case and reply to you, in writing, within 90 days. This reply will cite specific reasons for the denial, the plan provisions on which the denial was based, and any additional information you should submit to have the claim reconsidered. If you are not satisfied with the reasons cited in the reply, you may further appeal by submitting, in writing, a request for final review of the denial of the claim to the Vice President, Human

---

[4]Although plaintiff did not attach the Plan as an exhibit to her amended complaint, the Plan's centrality to this litigation permits its consideration in connection with the instant motion. See Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993) (in deciding a motion to dismiss, a court may consider documents central to a plaintiff's claim without regard to whether they were attached to or incorporated into the complaint).

4

Resources, Lockheed Sanders. The Vice President, Human Resources, will give you a final determination, generally within 60 days, with specific reasons for the decision. These steps must be followed in the order stated above.

The amended complaint is silent as to whether plaintiff attempted to secure the benefits she believes are due her in accordance with the Plan's appellate provisions. Cf. Fed. R. Civ. P. 9(c) ("In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred."). Plaintiff's opposition papers make clear, however, that plaintiff has not yet sought an administrative resolution of her claims.

II.

Plaintiff does not dispute that administrative exhaustion of contract-based claims is ordinarily required in this Circuit. See Drinkwater, 846 F.2d at 826. Correctly noting that exhaustion is not a jurisdictional prerequisite to filing suit under ERISA, see, e.g., Horan v. Kaiser Steel Retirement Plan, 947 F.2d 1412, 1416 (9th Cir. 1991), and that exhaustion is excused in situations where pragmatic concerns favor immediate institution of a lawsuit, see Drinkwater, 846 F.2d at 826 (exhaustion is not required when resort to the administrative route would be futile or where the administrative remedy is inadequate), plaintiff instead argues that a waiver of the

5

exhaustion requirement is warranted here.  In support of this position, she asserts that defendants have not given either her or the class adequate notice that benefits have been wrongfully withheld.  She also contends that exhaustion would be futile, both for her personally and for the class as a whole.

To the extent that plaintiff's waiver argument rests on inadequate personal notice and/or an assertion of futility with respect to her own claim, it is without merit.  Whatever deficiencies there might have been in the Explanation of Benefits which followed her hospital stay, it is clear that plaintiff now knows of defendants' allegedly illicit actions.  And the absence of any limitation on the time within which plaintiff may file an administrative claim under her Plan means that administrative remedies remain available to her.[5]  Furthermore, there is no reason to conclude that defendants will deny plaintiff's administrative claim on the merits.  Plaintiff admits as much (and a good deal more); in her opposition papers, she states that "she would likely prevail if an [administrative] appeal were to be filed now" because granting her appeal would permit defendants to "effectively terminate this putative class action by providing a remedy to a single member of the class, and thereby avoid

---

[5]Defendants concede that plaintiff remains entitled to have her claim reviewed on the merits at the administrative level.

6

liability for harm caused to those class members who still do not know they have been harmed." Regardless of whether her prognostication of administrative success proves correct, plaintiff certainly cannot contend that an administrative rejection of her claim is foreordained.

To the extent that plaintiff's argument for waiver is premised on concerns about the rights of other class members, it would appear to be misplaced. If Healthsource New Hampshire has the power to act and in fact did act in the manner plaintiff alleges, it is a Plan fiduciary as a matter of law. See Varity Corp. v. Howe, 116 S. Ct. 1065, 1071-73 (1996) (discussing how discretionary management or administration of ERISA plans makes the manager or administrator a plan fiduciary). As such, it would have a clear fiduciary duty not to act in the manner outlined by plaintiff. Because it would surely be a breach of Healthsource New Hampshire's fiduciary duties to other Plan beneficiaries and participants to use Plan assets to "buy off" plaintiff without resolving the merits of her claims, an award of benefits to plaintiff could only follow a determination that the Plan's terms have been violated. Thus, a decision to award benefits would be tantamount to a decision that all persons situated similarly to plaintiff (whether in plaintiff's Plan or in other plans with which it has similar relationships) are

7

entitled to similar benefits not yet paid.  And given the statutory, see generally 29 U.S.C. § 1104(a)(1)(A) (plan fiduciaries must act "for the exclusive purpose of[] providing benefits to participants and their beneficiaries") and common law obligations imposed upon plan fiduciaries, as well as its own role in the confusion over this matter,[6] Healthsource New Hampshire would be playing with fire if it were to determine that plaintiff is entitled to benefits; pay her those benefits; but then fail to notify other persons similarly situated to plaintiff of their entitlement to wrongfully withheld benefits.  "A fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information." Barker v. American Mobil Power Corp., 64 F.3d 1397, 1403 (9th Cir. 1995) (finding a breach of duty where a plan fiduciary failed to inform plaintiffs of suspicions he had concerning the mismanagement of plan funds); see also, e.g., United States v.

---

[6]Along these lines, the Court notes that the real issue in this case may be whether certain Plan provisions can be taken to provide support for defendants' (and, perhaps, Lockheed Sanders') actions, and more whether the Plan's summary plan description was and is sufficient to satisfy ERISA.  See 29 U.S.C. § 1022(a)(1) ("The summary plan description . . . shall be written in a manner calculated to be understood by the average participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the Plan.").

8

<u>Phillips</u>, 19 F.3d 1565, 1583 (11th Cir. 1994) (Part 1 of ERISA, which imposes certain reporting and disclosure requirements on plan fiduciaries, is designed, <u>inter alia</u>, to provide <u>specific</u> data to plan participants and beneficiaries about the rights and benefits to which they are entitled) (citing House Education and Labor Committee, Employee Retirement Income Security Act of 1974, H.Rep. No. 533, 93rd Cong., 2d Sess. (1974), <u>reprinted in</u> 1974 U.S.C.C.A.N. 4639, 4648-49), <u>cert. denied</u>, 115 S. Ct. 1312 (1995); <u>Rodriguez</u> v. <u>MEBA Pension Trust</u>, 872 F.2d 69, 74 (4th Cir.) ("Plan participants should not lose . . . benefits through mistakes and misunderstandings. Congress promulgated the fiduciary duty and other provisions of ERISA to ensure that plan participants would receive <u>effective</u> notice of any plan changes that might affect their . . . rights.") (citation, internal quotation marks, and ellipses omitted), <u>cert. denied</u>, 493 U.S. 872 (1989).[7]

In the end, then, the court is of the opinion that plaintiff's claim remains a suitable candidate for administrative

---

[7]Although it is not entirely clear whether Healthsource is a Plan fiduciary, Healthsource has only been sued for breach of fiduciary duty. Therefore, the success of any claim plaintiff might have against it depends necessarily on its fiduciary status. And if it is a Plan fiduciary, the above analysis would pertain to it with equal force.

exhaustion.[8]  In so ruling, the court is mindful of the purposes underlying the exhaustion requirement:

> By preventing premature judicial interference with a . . . plan's decision-making processes, the exhaustion requirement enables plan administrators to apply their expertise and exercise their discretion to manage the plan's funds, correct errors, make considered interpretations of plan provisions, and assemble a factual record that will assist the court reviewing the administrators' actions.  Indeed, the exhaustion requirement may render subsequent judicial review unnecessary in many ERISA cases because a plan's own remedial procedures will resolve many claims.

Communication Workers of America v. AT&T Co., 40 F.3d 426, 432 (D.C. Cir. 1994) (citation omitted).  At this point in time, it also has no reason to believe that defendants and Lockheed Sanders (who though not named as a defendant, has an obvious interest in a satisfactory resolution of this dispute) will fail to honor any unfulfilled statutory and common law duties owed to plaintiff and to those similarly situated, whether in plaintiff's Plan or in other similar plans.

---

[8]In so ruling, the court obviously rejects plaintiff's contention that the "statutory claims" set forth in Counts II and III of the amended complaint should not be sent back to the administrative process.  Given that defendants have discontinued the practice challenged here and would almost certainly be obliged, because of their fiduciary status, to afford class-wide relief, a payment of wrongfully withheld benefits would appear sufficient to afford all relief sought by plaintiff.  Thus, to the extent that Counts II and III seek relief that is properly obtainable, they are nothing more than "simple contract claim[s] . . . dressed in statutory clothing." Drinkwater, 846 F.2d at 826.  As such, they should be exhausted. Id.

III.

For the reasons stated, defendants' motion to dismiss [document no. 28] is granted.  All other pending motions are mooted by this order.  The Clerk's Office is directed to close the case.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge


Date:  March 27, 1997

cc:   Paul McEachern, Esq.
      Edward J. Carnot, Esq.
      Michael C. Harvell, Esq.
      Arthur M. Kaufman, Esq.

11